## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| NATIONAL UNION FIRE | § | |
| INSURANCE COMPANY OF | § | |
| PITTSBURGH, PA., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:07-CV-1958 |
| | § | |
| U.S. BANK, NATIONAL | § | |
| ASSOCIATION and JOHN R. | § | |
| STANLEY | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

In this declaratory judgment action regarding insurance coverage, Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") has filed a Motion for Summary Judgment [Doc. # 24] ("MSJ"). Defendant U.S. Bank, National Association ("U.S. Bank") has filed a response and a Cross-Motion for Summary Judgment [Doc. # 39] ("Cross-Motion"). The motions are ripe for disposition.[1] Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that the Plaintiff's Motion should be

---

[1]     Plaintiff National Union then filed a reply and a response to the cross-motion [Doc. # 46], and Defendant U.S. Bank filed a reply in support of its cross-motion [Doc. # 49].

**granted** and Defendant's Cross-Motion should be **denied**.[2]

# I.  BACKGROUND

In April 2002, Plaintiff National Union issued an Executive and Organization Liability Insurance Policy ("the Policy") to TransTexas.[3]  The Policy provides certain liability coverage for directors and officers of TransTexas.  Defendant Stanley, as former Chief Executive Officer of TransTexas, is an "Insured Person" under the Policy.  Defendant U.S. Bank served as Liquidating Trustee for TransTexas during a 2002 bankruptcy proceeding.

Events relevant to the instant case began several years before the Policy was issued.  In April 1999, TransTexas filed for bankruptcy relief under Chapter 11 of the U.S. Bankruptcy Code.  The resulting Reorganization Plan, effective March 17, 2000, provided that Stanley would be granted a three-year employment agreement, with the following terms:

    (1)    Stanley would serve as CEO of TransTexas and control one seat out of five on TransTexas' Board of Directors;

    (2)    Stanley could only be terminated for cause during the first two years of the employment agreement;

---

[2]    Defendant John R. Stanley has not filed a summary judgment motion or a response to Plaintiff's motion.  The Court may enter summary judgment against him, despite his failure to file opposition, if Plaintiff's motion is "properly made and supported" and summary judgment is "appropriate."  FED. R. CIV. P. 56(e)(2).

[3]    Executive and Organization Liability Insurance Policy (Exhibit F to MSJ) ("Policy").

(3)     Stanley would be entitled to a severance payment of $3 million if terminated for reasons other than cause; $1.5 million if terminated for cause; and no payment if terminated for certain non-economic cause factors; and,

(4)     if Stanley voluntarily resigned during the term of the employment agreement, he would be entitled to no severance payment.[4]

On or about January 30, 2002, in an Executive Session meeting of the TransTexas Board of Directors, the Board announced its "intention to exercise the severance option of Stanley's Employment Agreement."[5]  However, Stanley remained as CEO until March 2002, negotiating the terms of his termination with TransTexas and the Board.  At that point, Stanley and the Board agreed that he would "resign," but that his resignation would be treated as a "termination without cause."  As set forth by the Bankruptcy Court:

> In March 2002, Stanley and the Company agreed that he would be permitted to resign and would be entitled to receive three million dollars ($3,000,000), payable in installments, the first of which would be one million dollars ($1,000,000) in April 2002 and installments thereafter. In order to avoid the express terms of the Employment Agreement, which did not require any severance payment on resignation, the Board acceded to a term in the Separation Agreement that treated Stanley's

---

[4]     Findings of Facts and Conclusions of Law, *U.S. Bank, Nat'l Ass'n, as Liquidating Trustee, v. John R. Stanley, Sr.*, Adversary No. 03-2109, U.S. Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (Schmidt, J.) (entered Jan. 12, 2007) (Exhibit C to MSJ) ("FF&CL"), at 2-3, ¶5.

[5]     *Id*. at 5, ¶ 13.  In January 2001, the Board had retained a law firm to investigate allegations of wrongdoing by Stanley; the investigators' report concluded that the Board had valid grounds to terminate Stanley for cause.  *Id*. at 4, ¶ 9.

resignation as a termination without cause.[6]

The Bankruptcy Court also found that Stanley had insider status and "exercised actual control of [TransTexas] during the period of negotiations for his severance by, among other things, threatening litigation against [TransTexas] and its Board of Directors if his demands for the [severance] payments were not met."[7]   Between March and August 2002, TransTexas was insolvent and unable to continue normal business operations, but made actual payments to Stanley totaling $2,270,794.90.[8]

On November 14, 2002, TransTexas again filed for bankruptcy relief under Chapter 11.[9]  Defendant U.S. Bank served as Liquidating Trustee for TransTexas, and filed an adversary proceeding against Stanley, seeking to recover the severance payments made to him because (1) the payments were avoidable preferences under federal law, (2) the payments were fraudulent transfers under federal law, and (3) the payments were fraudulent transfers under Texas law.  When sued in the adversary

---

[6]     *Id*. at 5, ¶ 15.  The Employment Agreement and Separation Agreement are not in the record. However, Defendant U.S. Bank agrees that Stanley actually resigned.  Cross-Motion, at 3-4 ("Stanley and TransTexas agreed that he would be permitted to voluntarily resign . . . The Board further agreed to treat Stanley's resignation as a termination without cause, a necessary proviso if Stanley was to be entitled to receive the severance payment, since the original Employment Agreement did not provide for the severance in the event of resignation.")

[7]     *Id*. at 8, ¶ 24.

[8]     *Id*. at 6-7, ¶¶ 19, 21; *id*. at 13-14, ¶¶ 40-41.

[9]     *Id*. at 1, ¶ 1.

action, Stanley made a claim under the Policy for coverage of U.S. Bank's claim against him.   National Union advanced defense costs to Stanley, and issued a reservation of rights letter.[10]

The Bankruptcy Court awarded relief to U.S. Bank on all three grounds, entering judgment against Stanley in the amount of $2,270,794.90, and making U.S. Bank a judgment creditor of Stanley.[11]   In the course of its ruling, the Bankruptcy Court found that Stanley actually resigned from TransTexas, and was not entitled to severance payments because the Employment Agreement provided for severance payments only in the event of termination.[12]  The Bankruptcy Court's decision became final on April 11, 2007.

Plaintiff National Union then filed suit in this Court, seeking a declaration that the Bankruptcy Court's judgment against Stanley is not covered under the Policy issued by Plaintiff to TransTexas.   The parties dispute whether the judgment against Stanley is a "Loss" covered by the Policy, Section 2(p), which defines the term as follows:

---

[10]    Letter from C. Henderson to B. Alexander, dated October 29, 2003 (Exhibit B to MSJ).

[11]    Judgment, *U.S. Bank, Nat'l Ass'n v. Stanley*, Adversary No. 03-2109, U.S. Bankruptcy Court, Southern District of Texas (Schmidt, J.) (entered April 11, 2007) (Exhibit D to MSJ); FF&CL, at 16-24, ¶¶ 6-26; *id*. at 24-28, ¶¶ 27-35.

[12]    FF&CL, at 14, ¶ 42; *id*. at 5, ¶ 15.

> "Loss" means damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), Defense Costs and Crisis Loss; however, "Loss" (other than Defense Costs) shall not include: . . . (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.[13]

The parties also dispute whether the exclusion in Section 4(a) of the Policy precludes coverage.  Section 4(a) provides:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured: (a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which the Insured was not legally entitled . . .[14]

Plaintiff and U.S. Bank have cross-moved for summary judgment.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[15]   In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any

---

[13]     Policy, at 4, § 2(p).

[14]     *Id*. at 6, § 4(a).

[15]     *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[16]

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."[17]  The moving party, however, need not negate the elements of the non-movant's case.[18]  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'"[19]

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.[20]  "An issue is material if its resolution could affect the outcome of the action.   A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[21]

In deciding whether a genuine and material fact issue has been created, the facts

---

[16]   FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

[17]   *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

[18]   *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[19]   *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

[20]   *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

[21]   *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.[22]  However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts."[23]  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.[24]  Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden.[25]  Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case."[26]  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.[27]

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.[28]  A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the

---

[22]   *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

[23]   *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).

[24]   *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).

[25]   *Morris v. Covan World Wide Moving, Inc.*,  144 F.3d 377, 380 (5th Cir. 1998).

[26]   *Id.*

[27]   *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

[28]   *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).

record is to the contrary.[29]

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[30]

## III.   ANALYSIS

### A.   Principles of Contract Construction

Under Texas law, insurance policies are construed according to ordinary principles of contract law.[31]  A court construing a contract is to ascertain the parties' true intent.[32]  The intention of the parties is to be gathered from the instrument as a whole, and each provision should be given effect.[33]

Whether a contract is ambiguous is a question of law for the court.[34]  "If a

---

[29]     *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

[30]     *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotations omitted).

[31]     *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 854 (5th Cir. 2003).

[32]     *Gonzales v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004);  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

[33]     *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994).

[34]     *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987).

written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous."[35]   A court may not vary the terms of an unambiguous contract, which are to be given their plain and ordinary meaning.[36]   Unambiguous contracts do not present a fact question, and should be interpreted by the court as a matter of law.[37]

Contractual language is ambiguous when it is "subject to two or more reasonable interpretations or meanings."[38]   This ambiguity creates a fact question regarding the parties' intent.[39]   However, a contract is not ambiguous merely because the parties disagree as to interpretations of its terms.[40]

In general, an insured bears the burden of showing that a claim is within the policy's coverage, whereas the insurer bears the burden of demonstrating that a policy

---

[35]   *Gonzales*, 394 F.3d at 392.

[36]   *DeWitt Cty. Elec. Co-op, Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999); *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984).

[37]   *Sw. Bell Tel., L.P. v. Pub. Util. Comm'n of Texas*, 467 F.3d 418, 422 (5th Cir. 2006); *Gonzales,* 394 F.3d at 392; *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650-51 (Tex. 1999).

[38]   *Gonzales*, 394 F.3d at 392.

[39]   *Sw. Bell*, 467 F.3d at 422.

[40]   *Gonzales*, 394 F.3d at 392.

exclusion bars coverage.[41]   If the court determines that the insurance policy is ambiguous, Texas law requires the court to construe the policy in favor of the insured.[42]   The parties' intent to exclude coverage "must be expressed in clear and unambiguous language."[43]

### B.    "Loss" under Section 2(p)

Plaintiff argues that the judgment against Stanley is not a "Loss" under the Policy because the law does not permit recovery of matters "uninsurable under the law."   As recited above, Section 2(p) of the Policy defines "Loss" as follows:

> "Loss" means damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), Defense Costs and Crisis Loss; however, "Loss" (other than Defense Costs) shall not include: . . . (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.[44]

Plaintiff argues that, because the Bankruptcy Court ordered Stanley to return property

---

[41]    *Performance Autoplex II*, 332 F.3d at 854.

[42]    *Id.*; *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 391 F. Supp. 2d 541, 569 (S.D. Tex. 2005).

[43]    *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991).  When construing an exclusionary clause with ambiguous language, the court must adopt the construction urged by the insured, so long as that construction is "not unreasonable."  *See id.* (a court must adopt the insured's construction of an exclusionary clause if that construction is "not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent"); *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 2005 WL 954997, at *3 n.1 (N.D. Tex. 2005) (citing *National Union* rule but noting that "the Texas Supreme Court had previously made clear that such a rule of construction only applies if the exclusionary clause is ambiguous").

[44]    Policy, at 4, § 2(p).

to which he was not entitled, no "Loss" exists under the Policy.

The case *Nortex Oil & Gas Corp. v. Harbor Ins. Co.* is instructive. Nortex Oil & Gas sued its insurance company for coverage of a loss arising from a claim by Texaco and Humble Oil & Refining Company ("Humble") that Nortex had converted property by wrongfully appropriating and selling oil belonging to Texaco and Humble.[45] After settling with Texaco and Humble, Nortex filed a claim with its insurance company, seeking indemnity on the grounds that the settlement amount was a "loss" under its policy. The Texas appellate court rejected Nortex's argument:

> When Nortex settled the claims of Humble and Texaco it did not sustain a 'loss' within the meaning of the insurance contract; it was merely paying for oil it had removed and sold from the land of Humble and Texaco. An insured (under such a policy as we have here) does not sustain a covered loss by restoring to its rightful owners that which the insured, having no right thereto, has inadvertently acquired. . . . The insurer did not contract to indemnify the insured for disgorging that to which it was not entitled in the first place, or for being deprived of profits to which it was not entitled.[46]

Similarly, in a Seventh Circuit case construing the term "loss" under a similar insurance policy, a company known as Level 3 Communications reached a settlement with plaintiffs alleging securities fraud. Level 3 then sought insurance coverage for the settlement amount, claiming that the outlay was a "loss" under its policy. In a

---

[45]   *Nortex Oil & Gas Corp. v. Harbor Ins. Co.*, 456 S.W.2d 489 (Tex. Civ. App.—Dallas 1970, no writ)

[46]   *Id.* at 493-94.

ruling favoring the carrier, Judge Posner, for the Seventh Circuit panel, wrote:

> The interpretative principle for which Federal [Insurance Company] contends—that a "loss" within the meaning of an insurance contract does not include the restoration of an ill-gotten gain—is clearly right.[47]

The Court noted that the damages sought by plaintiffs in the underlying case were "restitutionary in nature," seeking to "divest the defendant of the present value of the property obtained by fraud" and to "deprive the defendant of the net benefit of the unlawful act."[48]

Defendant U.S. Bank attempts to distinguish *Nortex*, arguing that the case is inapposite because, "[u]nlike the insured in *Nortex*, Stanley had a clear contractual right to the severance payments at the time he received them (by virtue of both the original Employment Agreement and the Separation Agreement); and the Bankruptcy Court did not find that he converted property, nor did it require him to return the payments because he wrongfully acquired the payments or was unjustly enriched."[49] This argument is unsupportable in light of the Bankruptcy Court's opinion.  As discussed more fully in Section III.C.2, *infra*, of this Memorandum, the Bankruptcy

---

[47]   *Level 3 Comm'ns, Inc. v. Fed. Ins. Co.*, 272 F.3d 908, 910 (7th Cir. 2001).

[48]   *Id*. at  910-11 ("An insured incurs no loss within the meaning of the insurance contract by being compelled to return property that it had stolen, even if a more polite word than "stolen" is used to characterize the claim for the property's return").

[49]   Cross-Motion, at 8.

Court explicitly found that Stanley was not terminated, but instead voluntarily resigned; that because of his resignation he was entitled to no severance payments under the Employment Agreement; and that the consideration recited in the Separation Agreement, upon which the severance payments were based, was illusory.[50] The Bankruptcy Court's decision is final[51] and cannot be revisited here.[52]

Under the teachings of *Nortex* and *Level 3*, the payments Stanley owes because of the Bankruptcy Court's judgment against him do not qualify as a "Loss" under the Policy. U.S. Bank and Stanley, as the insured, bear the burden to prove coverage under the Policy.[53] They have not done so, and summary judgment for Plaintiff National Union is warranted.

C.    **Policy Exclusion Under Section 4(a)**

The Court's holding, above, that the Bankruptcy Court's judgment against Stanley is not a "Loss" under the Policy is sufficient to bar coverage. As an alternate ground for summary judgment in Plaintiff's favor, however, the Court further holds that Section 4(a) excludes Stanley's claim from coverage.

---

[50]    FF&CL, at 14, ¶ 42.

[51]    Judgment (Exhibit D to MSJ).

[52]    U.S. Bank's arguments regarding Stanley's "right" to the severance payments are an attempt to relitigate issues adjudicated by the Bankruptcy Court, and are barred by res judicata and collateral estoppel. *See, e.g., U.S. v. Davenport*, 484 F.3d 321, 325-26 (5th Cir.), *cert. denied*, 128 S. Ct. 805 (2007).

[53]    *See Performance Autoplex II*, 332 F.3d at 854.

Plaintiff National Union argues that the "profit or advantage" exclusion in Section 4(a) bars coverage. The Policy provides for the following exclusion from coverage:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured: (a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which the Insured was not legally entitled . . .[54]

As a preliminary matter, the Court holds that the exclusion's language is not ambiguous. Both parties have argued that the exclusion's plain language supports their position. Defendant U.S. Bank, however, makes an alternative argument that the exclusion is ambiguous, stating, "At a minimum, the exclusion is ambiguous to the extent it fails to define profit or advantage and to the extent it fails to define 'legally entitled.'"[55] This argument is unpersuasive. Both "profit or advantage" and "legally entitled" have been applied by the courts without difficulty or further definition.[56]

Because the provision is not ambiguous, the Court applies the plain meaning of the provision's terms. The parties' arguments center on two phrases in the exclusion provision: "profit or advantage" and "legally entitled."

---

[54] Policy, at 6, § 4(a).

[55] Cross-Motion, at 20 n.8.

[56] *See, e.g., TIG Speciality Ins. Co. v. Pinkmonkey.com, Inc.*, 375 F.3d 365 (5th Cir. 2004); *Jarvis Christian Coll. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 197 F.3d 742 (5th Cir. 1999); *Stewart Title Guar. Co. v. Kiefer*, 984 F. Supp. 988, 994-95 (E.D. La. 1997); *Fed. Sav. & Loan Ins. Corp. v. Mmahat*, 97 B.R. 293 (E.D. La. 1988).

### 1.     "Profit or advantage"

The Bankruptcy Court's opinion establishes that Stanley received a "profit or advantage" by diverting TransTexas corporate assets to his own use.  In particular, the Bankruptcy Court found that Stanley was to receive $3 million under the Separation Agreement,[57] that Stanley was an "insider" at the time that sum was negotiated,[58] that TransTexas was insolvent at the time the Separation Agreement was executed,[59] and that the payments to Stanley allowed him to recover more than he would have received as a general unsecured creditor.[60]  These findings clearly satisfy the "profit or advantage" language under the case law, which explicitly recognizes that "advantage" is a broad term encompassing "any gain or benefit."[61]

Defendant U.S. Bank argues that Section 4(a)'s exclusion does not apply because the severance payments to Stanley were not a "profit or advantage," but

---

[57]     FF&CL, at 5, ¶ 15.

[58]     *Id*. at 18, ¶ 12.

[59]     *Id*. at 27, ¶ 31.

[60]     *Id*. at 18, ¶ 11; *id*. at 27, ¶ 30.

[61]     *Jarvis*, 197 F.3d 748-49 (although board member received no actual profit from a transfer of funds, the transfer did provide the board member with an advantage "by infusing his business with substantial investment capital with which to operate his business"; the term "advantage" is broader than "profit" and "encompasses any gain or benefit, such as an *opportunity* to make a profit but without responsibility to repay the loan") (emphasis original). *See Pinkmonkey.com*, 375 F.3d at 370 (CEO's conviction for statutory stock fraud, which required a finding that the CEO "benefitted from a false representation or promise," was sufficient to establish that the CEO had gained a personal profit or advantage).

instead a "remuneration," potentially implicating but not satisfying a different exclusion in Section 4(b).  Section 4(b) excludes coverage of a loss "arising out of, based upon or attributable to payments to an Insured of any remuneration without the previous approval of the stockholders or members of an Organization, which payment without such previous approval shall be held to have been illegal . . .".[62]  U.S. Bank maintains that, although Section 4(b) does not bar coverage because the payment was made with prior Board approval, the language is "instructive."  U.S. Bank asserts that Section 4(b) evidences an intent to construe "remuneration" in a category distinct and apart from "profit or advantage."  U.S. Bank further argues that, "if remuneration were considered to be a profit or advantage as National Union suggests, the remuneration exclusion would not be necessary and [the clause] would be rendered meaningless."[63]

The terms "remuneration" and "profit or advantage" are not mutually exclusive.  None of the three terms is defined in the Policy, but their dictionary definitions are overlapping.[64]  The fact that TransTexas' payments to Stanley meet the dictionary definition of "remuneration" does not establish that they do not also constitute a

---

[62]    Policy, at 6, § 4(b).

[63]    Cross-Motion, at 17.

[64]    Merriam-Webster defines "remuneration" as "something that remunerates: RECOMPENSE, PAY."  Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary (last visited June 6, 2008).  It defines "profit" as "a valuable return: GAIN," and "advantage" as "BENEFIT, GAIN."  *Id*.

"profit or advantage."  These overlapping terms do not bar the applicability of Section

4(a).  Even in cases in which more than one exclusion actually applies to bar coverage,

overlapping exclusions are permissible.[65]

     The Court holds that the severance payments to Mr. Stanley were a "profit or

advantage" under Section 4(a).

### 2.     "Legally entitled"

     Plaintiff argues that the Bankruptcy Court's opinion forecloses Defendant's

argument that Stanley was "legally entitled" to the severance payment, because the

Court found that Stanley resigned: "Stanley voluntarily resigned, thus entitling him

to no severance payment under the Employment Agreement."[66]

     U.S. Bank argues, first, that Stanley was entitled to the payments at the time he

received them, based upon the Employment Agreement and the Separation

Agreement, and that "U.S. Bank only became entitled to recover those sums because

TransTexas filed for bankruptcy protection within a year of when the payments were

---

[65]    The Fifth Circuit has recognized that two clauses can legitimately "exclude separate, but potentially overlapping types of conduct."  *Constitution State Ins. Co. v. Iso-Tex Inc.*, 61 F.3d 405, 408 (5th Cir. 1995).  The Court stated, "Given the strict rules of construction against a drafter, an insurance provider would be motivated to draft overlapping and redundant clauses which exclude coverage for the same conduct."  *See id*. at 409.

[66]    FF&CL, at 14, ¶ 42.

arranged."[67]  However, the Bankruptcy Court's focus was the fact that Stanley actually

resigned, and therefore was never entitled to the severance payments.[68]

Second, U.S. Bank argues that the Bankruptcy Court made no finding of fraud

or ill-gotten gain,  but instead set aside the payments to Stanley merely because of the

superior rights of other creditors.  U.S. Bank argues that the Bankruptcy Court did not

base its judgment on a finding that Stanley was not entitled to the payments, and that

the Bankruptcy Court's decision, based on three statutory provisions, did not require

a finding of ill-gotten gain.  National Union contests this argument, maintaining that

the Bankruptcy Court based its rulings on Stanley's inequitable conduct, including his

use of his insider status with TransTexas to negotiate the severance payments and his

"overreaching tactics."[69]  While denying that Stanley committed fraud, U.S. Bank has

conceded that "[i]t is beyond dispute that Stanley committed one or more wrongful

---

[67]     Cross-Motion, at 7.

[68]     FF&CL, at 27, ¶ 29 ("Stanley did not exchange equivalent value for the Transfers he
received pursuant to the terms of the Separation Agreement because he resigned.  Under the
Employment Agreement, resignation terminated any obligation of the Company to pay
Stanley any severance payments.") *See id*. at 14, ¶ 42.

[69]     *See, e.g.*, FF&CL, at 15, ¶ 45 ("The Transfers were also made to an insider, Stanley, for an
antecedent debt, TransTexas was insolvent at the time of the Transfers and Stanley had
reasonable cause to believe that TransTexas was insolvent."); *id*. at 26-27, ¶ 29 ("Stanley is
not a mere transferee who took in good faith and for a reasonably equivalent value given the
significant level of his participation in the structuring of the Separation Agreement.  The
record reflects that he obtained the terms he desired in the Separation Agreement though
overreaching tactics and had specific criteria for the amount of funds he required in
connection with his departure from the Company.")

acts."[70]

Whether or not Stanley committed fraud is not dispositive.  The Section 4(a) exclusion does not require a finding of fraud or other illegal conduct.  Rather, the exclusion requires a finding that Stanley was "not legally entitled" to the payments. In *Jarvis Christian Coll. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, the Fifth Circuit held:

> 'Not legally entitled' simply is not synonymous with 'illegal.'  The two have quite different meanings, with 'illegal' involving a greater degree of misconduct.[71]

The *Jarvis* panel affirmed the lower court's holding that a board member was "not legally entitled" to a profit or advantage from a $2 million transfer "because, in transferring these funds, [the board member] breached his duty of loyalty" to the corporation, and therefore "the transaction is presumptively fraudulent and void as being against public policy."[72]  The Court rejected the board member's argument that the exclusion did not apply because a breach of the duty of loyalty is not an illegal act.[73]  Similarly, in *Pinkmonkey.com*, the Fifth Circuit again construed a policy exclusion that precluded coverage for a "profit, remuneration, or advantage" to which

---

[70]     Cross-Motion, at 6 n.3.

[71]     *Jarvis*, 197 F.3d at 749.

[72]     *Id*.

[73]     *Id*.

the insured was "not legally entitled," and concluded that "[a] defendant is not legally entitled to an advantage or profit resulting from his violation of law if he could be required to return such profit."[74]  In this case, the "not legally entitled" language in Section 4(a) does not require a finding or conclusion from the Bankruptcy Court that Stanley committed fraud or another illegal act.[75]

The Bankruptcy Court's finding that Stanley voluntarily resigned, and therefore was not entitled to the severance payments under the Employment Agreement,[76] is sufficient to satisfy the "not legally entitled" phrase of the Section 4(a) exclusion. This conclusion is further supported by the Bankruptcy Court's findings that Stanley engaged in inequitable conduct, including findings that Stanley was an insider, that TransTexas was insolvent when the Separation Agreement was executed, and that Stanley engaged in "overreaching tactics."[77]

---

[74]   *Pinkmonkey.com*, 375 F.3d at 370. The Fifth Circuit held that the Pinkmonkey.com CEO was "not legally entitled" to his profit because he had been found liable for statutory stock fraud by a jury, because the relevant statute allowed for the equitable remedy of rescission, and because he therefore "could have been" required to return the money.  *Id*. at 370-71.  In the case at bar, although Stanley was not found liable by a jury, he has been ordered by the Bankruptcy Court to refund the severance payments to TransTexas.

[75]   In fact, the Policy provides a separate exclusion covering fraud.  Policy, § 4(c) (excluding liability for claims "arising out of, based upon or attributable to the committing in fact of any deliberate criminal or deliberate fraudulent act by the Insured").

[76]   FF&CL, at 14, ¶ 42.  The Court also found that "the consideration recited in the Separation Agreement"—the Agreement upon which the severance payments were based—was "illusory and of no equivalent value to TransTexas."  *Id*.

[77]   *Id*. at 15, ¶ 45; *id*. at 26-27, ¶ 29.

### 3.     Conclusion regarding Section 4(a)

Plaintiff National Union has met its burden to show the exclusion in Section 4(a) of the Policy applies.  Defendant U.S. Bank has not demonstrated a genuine issue of material fact supporting its arguments that Stanley did not receive a "profit or advantage," or that Stanley was "legally entitled" to the severance payments. Summary judgment is accordingly granted for Plaintiff.

### D.     <u>Duty to Furnish Supersedeas Bond or Advance Additional Defense Costs</u>

Plaintiff National Union argues that it has no duty either to pay premiums on any bonds attendant to Stanley's bankruptcy appeal or to continue to advance defense costs to Stanley during the bankruptcy appeal.  Section 2(f) of the Policy provides the following definition:

> 'Defense Costs' means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond arising out of a ***covered judgment***, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and/or appeal of a Claim against an Insured, but excluding any compensation of any Insured Person or any Employee of an Organization.[78]

Plaintiff argues that, under this definition, its duty to pay bonds or defense costs arises only when those bonds or costs arise from a "covered judgment" under Section 2(f), and that the Bankruptcy Court's judgment against Stanley is not covered by the

---

[78]     Policy, § 2(f) (emphasis added).

Policy.

Defendant U.S. Bank has not contested these arguments.  Summary judgment on this point is granted in Plaintiff's favor.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 24] is **GRANTED**.  Judgment is entered against Defendants U.S. Bank and Stanley.  It is further

**ORDERED** that Defendant U.S. Bank's Cross-Motion for Summary Judgment [Doc. # 39] is **DENIED**.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **11**th day of **June, 2008**.

Nancy F. Atlas
United States District Judge